1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  HANDS ON VIDEO RELAY
    SERVICES, INC., a Delaware
11  corporation, and PURPLE
    COMMUNICATIONS, INC., f/k/a
12  GOAMERICA, INC., a Delaware
    corporation,

13                                          NO. CIV. S-09-996 LKK/DAD

14          Plaintiffs,

15      v.

16  AMERICAN SIGN LANGUAGE              O R D E R
    SERVICES CORP., a Florida
17  corporation; GRACIAS VRS,
    LLC, a Florida limited
18  liability company; ANGELA
    ROTH, an individual; and
19  DOES 1-25, inclusive,

20          Defendants.

21  _____/

22      This case involves a breakdown of an alleged joint venture

23  between defendant/counterclaimant American Sign Language Service

24  Corp. and plaintiff/counter-defendant Purple Commendations, Inc.,

25  and entities related to these two parties. Plaintiffs/counter-

26  defendants have moved to dismiss in part and strike in part ASLS's

1

1  counterclaim.  For the reasons stated below, the motion to dismiss

2  is denied in part, and the motion to strike is denied in full.

3                          **I. BACKGROUND**

4  **A.    The Parties**

5       The plaintiffs in this case are Purple Communications, Inc.

6  and Hands on Video Relay Services, Inc.  Purple Communications,

7  Inc. ("Purple") provides on-site communication services, including

8  interpreting, and video relay services.  Co-plaintiff Hands on

9  Video Relay Services Inc. ("HOVRS") is a wholly-owned subsidiary of

10  Purple.  HOVRS uses the internet to provide an audio/video link to

11  video interpreters, who interpret between hearing-impaired and

12  hearing persons.

13       Defendants are American Sign Language Service Corp., Gracias

14  VRS, LLC, and Angela Roth.  American Sign Language Service Corp.

15  ("ASLS") is a company that provides sign language interpreting

16  services to the deaf and hard-of-hearing.  Gracias VRS, LLC is a

17  subsidiary of ASLS.  Gracias utilizes video relay service to

18  provide communication services to deaf and hard-of-hearing Spanish-

19  speaking individuals.  "Video relay service" refers to a set of

20  telecommunication services that facilitate phone conversations

21  between hearing-impaired and hearing people through the use of a

22  video camera and a remote interpreter.  Angela Roth is President

23  and CEO of ASLS.

24       Defendant ASLS has filed a counterclaim against plaintiffs

25  Purple and HOVRS.  Defendants Gracias and Angela Roth have not

26  joined in this counterclaim.  Thus, the three parties relevant to

1 this order are ASLS, Purple and HOVRS.  The court endeavors to use
2 "plaintiffs" when referring to both plaintiff/counter-defendants
3 Purple and HOVRS.  However, ASLS's counterclaim complicates this
4 issue by using "Purple" to refer to Purple and HOVRS collectively,
5 Countercl. 1:4-5.  In some instances, it is not clear whether ASLS
6 intended to refer to Purple individually or to the two plaintiffs
7 together, and in these instances, the court has necessarily
8 repeated ASLS's use of the term "Purple."

9 **B.   The Joint Venture**

10     In November 2005, ASLS and HOVRS entered into a joint venture
11 to provide video relay services for the Spanish speaking market.
12 HOVRS equipped the video relay centers and provided technical
13 support, while ASLS provided interpreters, staff and training.  The
14 first call center was located in Kissimmee, Florida and a second
15 call center, established in September 2006, was in San Jaun, Puerto
16 Rico.  The details of the joint venture were further specified by
17 a service agreement adopted by the parties in the fall of 2006.
18 Under this service agreement, ASLS continued to be responsible for
19 staffing, training, and personnel management at both centers, as
20 well as facility management at the Florida center.  Purple managed
21 facilities at the Pueto Rico center.  Countercl. ¶ 22.

22     All parties allege that there was great potential for
23 expansion in the provision of these interpretive services.  In
24 essence, each side's claims in this matter center on the contention
25 that the other side wrongfully attempted to capture this potential
26 for itself, rather than sharing it through the joint venture.

1  Notwithstanding this broad similarity, on the present motion to

2  dismiss, only ASLS's counterclaim and the allegations therein are

3  at issue.   ASLS alleges that from the end of 2006 through the

4  beginning of 2007, call volume grew exponentially and consistently

5  exceeded Purple's expectations and projections for the centers.

6  Id. at 23.   Perceiving an opportunity to grow, ASLS sought to

7  expand the joint venture with additional call centers.   Id. at 24.

8  ASLS's particular claims center on Purple's alleged responses to

9  these efforts.

10 **C.   Basis for ASLS's Claims**

11     ASLS alleges that Purple expressed interest in expansion, but

12 that notwithstanding this expression, Purple actually intended to

13 minimize the joint relationship and instead secure the additional

14 revenue stream alone.   Id. at 25-26.   ASLS further alleges that

15 Purple did not take any action toward expansion of the joint

16 venture.

17     The first of these allegations pertains to December 2007.   At

18 that time, HOVRS merged with Purple and Purple allegedly threatened

19 to shutdown the call centers if ASLS did not agree to enter into a

20 new contract.   Id. at 28.   ASLS alleges that although it entered

21 into the January 2008 agreement under duress, the agreement did

22 include key provisions that were vital to ASLS.   Under the 2008

23 agreement, Purple agreed to compensate ASLS based upon the number

24 of video relay service minutes processed by ASLS.   Countercl. Ex.

25 A ¶¶ 5-6.   ASLS requested and Purple agreed that "it shall not

26 prioritize calls or otherwise discriminate against ASLS so as to

4

1  avoid routing such calls to ASLS or as to limit VRS Minutes made

2  available to ASLS." Countercl. Ex. A ¶ 3.  ASLS claims that the

3  call routing and antidiscrimination guarantee were material terms

4  to the agreement. Countercl. ¶ 31.

5      The agreement also provided that Purple would support the

6  expansion of the joint operated call centers.  The agreement

7  provided that Purple "[u]pon ASLS demonstrating and justifying to

8  HOVRS' reasonable satisfaction a rational business need for [video

9  relay service] communications center expansion beyond the existing

10  two cites . . . to meet existing and anticipated customer demand,

11  HOVRS will build additional call centers for operation by ASLS. .

12  ." Countercl. Ex. A ¶ 1.  The agreement further provided that

13  either party may terminate the agreement at anytime if the other

14  party was in material breach and failed to correct the breach after

15  thirty days written notice.  Countercl. Ex. A ¶¶ 15, 25.

16      ASLS contends that even after the agreement, and ASLS's

17  continued performance exceeding expectations, Purple would not open

18  another call center.  Countercl. ¶¶ 35, 38-39.  ASLS alleges that

19  the situation continued to deteriorate as Purple locked ASLS out of

20  the computer system thereby preventing ASLS from accessing

21  information about call routing and activity, while Purple continued

22  to divert calls away from ASLS.  Opp'n to Mot. to Dismiss 6:11-15.

23  ASLS further alleges that Purple began revising the compensable

24  minutes reports sent to ASLS, upon which ASLS had to rely because

25  of a lock out from the computer system.  Countercl. ¶¶ 46-53.

26      In July 2008 ASLS was informed by HORVS that Purple would not

honor the expansion provision of the agreement. An email from HOVRS was sent to ASLS in response to the question of why HOVRS was building other Spanish speaking call centers without ASLS involvement despite the 2008 agreement. Countercl. Ex. B ¶ 3. HOVRS responded by saying "We have decided to minimize our risk by allowing ourselves to have a higher percentage of the Spanish platform versus being 90% dependant on one partner." Id. In the fall of 2008, after ASLS declined the acquisition offer by Purple, Purple purchased Sign Language Associates, a company that provides similar services to ASLS. Countercl. ¶ 49. Purple allegedly expanded Sign Language Associates and set up call centers within ASLS's Florida territory. Id.

ASLS alleges that Purple was in material breach of the agreement and of Purple's fiduciary duties to its joint venture partner. Opp'n to Mot. to Dismiss 6:24-25. On September 17, 2008, ASLS sent a Notice of Breach to Purple and on September 30 informed Purple that ASLS would not be renewing its agreement with Purple for 2009.

ASLS contends that as it grew concerned about Purple's commitment to the joint venture, ASLS begin preparing to open its own call centers and established a separate business, Gracias, which opened September 23rd, 2008.

## II. STANDARDS

**A.   Standard for A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

In order to survive a motion to dismiss for failure to state

1  a claim, plaintiffs must allege "enough facts to state a claim to
2  relief that is plausible on its face." Bell Atlantic Corp. v.
3  Twombly, 550 U.S. 544, 569 (2007). While a complaint need not plead
4  "detailed factual allegations," the factual allegations it does
5  include "must be enough to raise a right to relief above the
6  speculative level." Id. at 555.

7      The Supreme Court recently held that Federal Rule of Civil
8  Procedure 8(a)(2) requires a "showing" that the plaintiff is
9  entitled to relief, "rather than a blanket assertion" of
10 entitlement to relief. Id. at 555 n.3. Though such assertions may
11 provide a defendant with the requisite "fair notice" of the nature
12 of a plaintiff's claim, the Court opined that only factual
13 allegations can clarify the "grounds" on which that claim rests.
14 Id. "The pleading must contain something more. . . than . . . a
15 statement of facts that merely creates a suspicion [of] a legally
16 cognizable right of action." Id. at 555, quoting 5 Wright & Miller,
17 Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004).[1]

18     On a motion to dismiss, the allegations of the complaint must
19 be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972).
20 The court is bound to give the plaintiff the benefit of every
21 reasonable inference to be drawn from the "well-pleaded"
22 allegations of the complaint. See Retail Clerks Int'l Ass'n v.

23
24      [1] The holding in Twombly explicitly abrogates the well
   established holding in Conley v. Gibson that, "a complaint should
   not be dismissed for failure to state a claim unless it appears
25 beyond doubt that the plaintiff can prove no set of facts in
   support of his claim which would entitle him to relief." 355 U.S.
26 41, 45-46 (1957); Twombly, 550 U.S. at 560.

1  <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). In general, the
2  complaint is construed favorably to the pleader. <u>See</u> <u>Scheuer v.</u>
3  <u>Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u>
4  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). Nevertheless, the court
5  does not accept as true unreasonable inferences or conclusory legal
6  allegations cast in the form of factual allegations. <u>W. Mining</u>
7  <u>Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

8  **B.   Standard for Motion to Strike Pursuant to Federal Rule of**
9      **Civil Procedure 12(f)**

10     Rule 12(f) authorizes the court to order stricken from any
11 pleading "any redundant, immaterial, impertinent, or scandalous
12 matter."  A party may bring on a motion to strike within 20 days
13 after the filing of the pleading under attack.  The court, however,
14 may make appropriate orders to strike under the rule at any time on
15 its own initiative.  Thus, the court may consider and grant an
16 untimely motion to strike where it seems proper to do so.  <u>See</u> 5A
17 Wright and Miller, <u>Federal Practice and Procedure</u>: Civil 2d ' 1380.

18     Motions to strike are generally viewed with disfavor, and will
19 usually be denied unless the allegations in the pleading have no
20 possible relation to the controversy, and may cause prejudice to
21 one of the parties. <u>See</u> 5A C. Wright & A. Miller, <u>Federal Practice</u>
22 <u>and Procedure</u>: Civil 2d ' 1380;  <u>See also</u> <u>Hanna v. Lane</u>, 610 F.
23 Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to
24 whether the challenged matter may raise an issue of fact or law,
25 the motion to strike should be denied, leaving an assessment of the
26 sufficiency of the allegations for adjudication on the merits.

1  See 5A Wright & Miller, supra, at 1380.

2  **III. ANALYSIS**

3  The counterclaim enumerates eleven claims.  Plaintiffs move to
4  dismiss all but the second and third claims, for breach of contract
5  and breach of the implied covenant of good faith and fair dealing,
6  respectively, and the eleventh claim, for trespass.[2]  Although the
7  court analyzes the various claims individually, plaintiffs repeat
8  several arguments.  Plaintiffs argue that the tort claims for
9  breach of fiduciary duty, for usurpation of business opportunities,
10 and the three misrepresentation claims all impermissibly seek to
11 recast contract claims as tort claims.  Plaintiffs also argue that
12 the misrepresentation claims fail to satisfy the pleading
13 requirements imposed by Fed. R. Civ. P. 9(b).  Plaintiffs argue
14 that the usurpation of business opportunity, unjust enrichment, and
15 accounting claims are duplicative of or superfluous in light of the
16 other claims.  Finally, plaintiffs argue that ASLS's unfair
17 competition claim fails with the above claims.

18 **A.   Fiduciary Duty Claims**

19 ASLS's first counterclaim is for breach of fiduciary duty.
20 ASLS's fourth counterclaim, for "usurpation of joint venture
21 opportunity" is also explicitly premised on the fiduciary duties
22 plaintiffs owed to ASLS on account of the joint venture.
23 Countercl. ¶ 77.  Purple argues that both of these claims

24

25      [2] Plaintiffs' memorandum in support of their motion explicitly
   states that it does not challenge the contract and good faith
26 claims.  Plaintiffs' memorandum does not refer to the trespass
   claim.

1  improperly attempt to recast contract claims as tort claims.  Mot.

2  to Dismiss 7:22-23.  Alternatively, Purple argues that the fourth

3  claim should be dismissed as duplicative of the first claim.

4      **1.   Relationship between Fiduciary Duty and Contract**

5          **Counterclaims**

6      Purple argues that ASLS's tort claims for breach of fiduciary

7  duty and usurpation of a joint venture opportunity should be

8  dismissed as impermissibly attempting to recast contract claims as

9  torts.  ASLS alleges that Purple owed a fiduciary duty to ASLS

10 arising out of the parties' relationship as joint venturers.

11 Plaintiffs concede that a joint venture relationship exists.

12 Partners in a joint venture owe each other fiduciary duties.  <u>See,</u>

13 <u>e.g.</u>, <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, 43 Cal. 4th

14 375, 386 (2008), <u>Galardi v. State Bar</u>, 43 Cal. 3d 683, 691 (1987).

15 ASLS alleges that Purple breached this duty by

16          (1) failing to pay invoices in full and on
            time as required, (2) failing to pay marketing
17          fees, (3) improperly routing calls away from
            ASLS, (4) denying ASLS access to the
18          information necessary to confirm [video relay
            service] minutes and ASLS performance, such as
19          queue monitoring and certified NECA reports,
            (5) failing to support expansion of jointly
20          operated call centers, and (6) expanding
            solely for the benefit of Purple/HOVR, to the
21          exclusion of ASLS.

22 Countercl. ¶ 60.  These same six factual allegations, repeated

23 verbatim, are the conduct alleged to have constituted a breach of

24 contract.  Countercl. ¶ 69.

25     "A person may not ordinarily recover in tort for the breach of

26 duties that merely restate contractual obligations."  <u>Aas v. Super.</u>

                                    10

1  <u>Ct.</u>, 24 Cal. 4th 627, 643 (2000).   Thus, a breach of ordinary

2  contractual duties, including the implied covenant of good faith

3  and fair dealing, is not ordinarily actionable in tort.   On the

4  other hand, a tort claim between contracting parties will lie if

5  the claim seeks to enforce a duty other than ordinary contractual

6  duties.   <u>See, e.g.</u>, <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 551-52

7  (1999), <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.

8  4th 503, 515 (1994).

9       This court recently applied this principle to grant a motion

10 to dismiss a negligence claim in <u>Intervest Mortg. Inv. Co. v.</u>

11 <u>Skidmore</u>, No. Civ. S-08-1543, 2008 WL 5113780, 2008 U.S. Dist.

12 LEXIS 101979 (E.D. Cal. Nov. 24, 2008).   In <u>Intervest</u>, a borrower

13 asserted a tort claim against the lending bank, alleging that the

14 bank had negligently administered the loan.   <u>Id.</u> at *1-*2.   This

15 claim was premised on a purported tort duty to act as a "reasonable

16 bank."   <u>Id.</u> at *3.   This court ruled that no such duty existed

17 separate from the duties set forth in the contract, and that the

18 negligence claim was therefore improper.   <u>Id.</u> at *4.   <u>See also</u>

19 <u>Patriot Sci. Corp. v. Korodi</u>, 504 F. Supp. 2d 952, 964 (S.D. Cal.

20 2007).

21       Unlike the purported duty to act like a reasonable bank, a

22 fiduciary duty is distinct from the ordinary contractual duties.

23 In some cases, the fiduciary duty may arise from circumstances

24 separate from the contract.   For example, one California Court of

25 Appeal recently determined that "the fiduciary duty that exists

26 because of the relationship between parties in a joint venture does

1  not arise from the existence of a contract," but from the joint
2  venture relationship itself.  Pellegrini v. Weiss, 165 Cal. App.
3  4th 515, 531 (2008).  ASLS alleges that this case is similar, in
4  that the joint venture relationship, and thus the fiduciary duty,
5  predate all contracts between the parties.  Countercl. ¶ 20.
6  However, even when the terms of a contract cause the parties to
7  enter into a joint venture relationship, this will in turn support
8  a claim for breach of fiduciary duty.  Galardi, 43 Cal. 3d at 692-
9  93 (in the context of a joint venture created by contract, holding
10 that the joint venturers owed each other fiduciary duties, and that
11 conduct could breach the fiduciary duty even though it did not
12 breach express terms of the contract); see also City of Hope, 43
13 Cal. 4th at 386 (evaluating whether a particular contract gave rise
14 to a fiduciary relationship).  More generally, although a tort
15 claim must be premised on a duty other than an ordinary contractual
16 duty, such a separate and special duty may owe its existence to a
17 contract.  "Stated another way, '[c]onduct which merely is a breach
18 of contract is not a tort, but the contract may establish a
19 relationship demanding the exercise of proper care and acts and
20 omissions in performance may give rise to tort liability.'"
21 Freeman & Mills v. Belcher Oil Co., 11 Cal. 4th 85, 107 (1995)
22 (Mosk, J., concurring and dissenting) (quoting Groseth Intern.,
23 Inc. v. Tenneco, Inc., 440 N.W. 2d 276, 279 (S.D. 1981)).[3]

24
25     [3] A separate example of such a "special relationship" is the
   relationship between an insurer and an insured.  Although the
26 relationship between an insurer and an insured is created by a
   contractual insurance policy, California courts have held that this

1    California courts have therefore held that when a fiduciary

2    duty exists, this duty is sufficiently separate from other contract

3    duties to support a tort claim for breach of fiduciary duty.  In

4    cases where California courts have rejected claims for breach of

5    fiduciary duty between contracting parties, they have done so on

6    the ground that no fiduciary duty existed, rather than on the

7    ground that the fiduciary duty was indistinct from or subsumed by

8    the contract.  City of Hope, 43 Cal. 4th at 386-392, Wolf v.

9    Superior Court, 107 Cal. App. 4th 25, 29-36 (2003).  Notably, both

10   City of Hope and Wolf, in explaining that no fiduciary duty

11   existed, noted that the parties in those cases were not engaged in

12   a joint venture.  City of Hope, 43 Cal. 4th at 386, 389; Wolf, 107

13   Cal. App. 4th at 32.  Where a joint venture has existed, California

14   courts have allowed claims for breach of fiduciary duty to proceed.

15   The partial dissent in Wolf stated that because "evidence may

16   develop establishing [that the parties] were involved in a joint

17   venture," the claim for breach of fiduciary duty should not have

18   been dismissed, notwithstanding the existence of the written

19   contract.  Wolf, 107 Cal. App. 4th at 39 (Johnson, J., concurring

20   and dissenting).  The position taken by the Wolf dissent was

21   adopted by the majority in Krantz v. BT Visual Images, 89 Cal. App.

22   4th 164, 178 (2001).  In Krantz, the plaintiff had brought claims

23   for, inter alia, breach of contract and breach of a fiduciary duty

24

25   relationship differs from the ordinary relationship between
     contracting parties, and this special relationship underlies
26   California tort law of insurance bad faith.  See, e.g., Jonathan
     Neil & Assoc. v. Jones, 33 Cal. 4th 917, 937 (2004).

1 arising out of a joint venture.  The trial court granted summary
2 judgment to defendant on the breach of fiduciary duty claim, on the
3 ground that there was no joint venture, and thus no fiduciary duty.
4 The appellate court reversed, holding that there was a material
5 question as to whether a joint venture existed, and thus that the
6 breach of fiduciary duty claim, together with the contract claims,
7 could proceed to trial.  Id. at 178.

8       The above cases establish that a fiduciary duty has a life
9 separate from contractual obligations, regardless of whether the
10 duty was created by contract or otherwise.  California courts have
11 further held that fiduciary duties are ordinarily not otherwise
12 limited by the existence of a contract.  In Stephenson v. Drever,
13 16 Cal. 4th 1167, 1170 (1997), the Court considered a "buy-sell
14 agreement," which was a contract that gave "a closely held
15 corporation the right and obligation to repurchase the shares of a
16 minority shareholder-employee on termination of his employment."
17 Under California law, a majority shareholder owes certain fiduciary
18 obligations to minority shareholders.  Id. at 1178.  Nonetheless,
19 defendants in Stephenson sought dismissal of plaintiff's claim for
20 breach of fiduciary duty on the ground that the contract obliging
21 plaintiff to sell these shares implicitly relieved defendants of
22 their fiduciary obligations.  Id. at 1179.  The Court rejected this
23 argument, concluding that although the contract and fiduciary duty
24 concerned similar subjects--i.e., the shares--the contract could
25 not implicitly abrogate the fiduciary duty.  Id.  Here, the
26 contract does not explicitly disclaim the fiduciary duty arising

14

1  out of the joint venture.  Countercl. Ex. A.

2      Finally,  the  fact  that  the  particular  alleged  conduct

3  underlying  the  fiduciary  duty  and  contract  counterclaims  is  the

4  same  is  not  a  barrier  to  the  fiduciary  duty  counterclaim.   The

5  California Supreme Court has held that "the same wrongful act may

6  constitute both a breach of contract and an invasion of an interest

7  protected  by  the  law  of  torts."   Erlich,  21  Cal.  4th  at  551

8  (quoting  North American Chemical Co. v. Superior Court,  59  Cal.

9  App.  4th  764,  774  (1997));  see also  Freeman & Mills,  11  Cal.  4th  at

10  107  (Mosk,  J.,  concurring  and  dissenting).   Although  this  court  is

11  not  aware  of  a  California  opinion  specifically  permitting  a  party

12  to  simultaneously  proceed  with  claims  for  breach  of  fiduciary  duty

13  and  breach  of  contract  premised  on  the  same  conduct,  the  California

14  cases  considering  the  relationship  between  contract  and  tort  claims

15  have  focused  exclusively  on  the  duties  enforced  by  those  claims,

16  rather  than  on  the  allegations  underlying  them.[4]   Erlich's

17  recognition  of  the  fact  that  the  same  conduct  may  breach  both

18

---

19      [4] In their reply brief, plaintiffs quote Atlantis Info. Tech.
    v. CA, Inc., 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007), which
20  applied New York law to conclude, as an alternative ground for
    dismissal,  that  a  breach  of  fiduciary  duty  claim  should  be
21  dismissed where the claim was "based upon the same allegations
    contained in the first count of the amended complaint to recover
22  damages  for  breach  of  contract."   Atlantis  relied  on  two  other
    cases which had held that under New York law, "A cause of action
23  for breach of fiduciary duty which is merely duplicative of a
    breach of contract claim cannot stand."  Cal Distrib. v. Cadbury
24  Schweppes Ams. Bevs., Inc., 2007 U.S. Dist. LEXIS 854 (S.D.N.Y.
    Jan. 5, 2007) (quoting William Kaufman Organization, Ltd. v. Graham
25  & James LLP, 269 A.D.2d 171, 703 N.Y.S.2d 439, 442 (1st Dept.
    2000)).

26

1 contract and tort duties, coupled with the California court's
2 repeated statements that the fiduciary duty owed to a joint
3 venturer is separate from a contract duty, compels the conclusion
4 that claims for breach of fiduciary duty and breach of contract may
5 rest on the same allegations.  This is not to say that whenever one
6 party owes a fiduciary duty to the other, the breach of a contract
7 between the parties also breaches the fiduciary obligation.  It may
8 be that the scope of the fiduciary duty is not co-extensive with
9 the scope of this particular contract, and that some of the
10 allegations here, if proven, would not violate the fiduciary duty.
11 This is a separate argument, one which plaintiffs have not
12 advanced, and whose applicability to the present facts is not
13 before the court.[5]

14       **2.    The Relationship between ASLS's First Counterclaim, for**
15             **Breach of Fiduciary Duty, and Fourth Counterclaim, for**
16             **Usurpation of Business Opportunity**

17       Plaintiffs alternatively argue that ASLS's fourth counterclaim
18 is duplicative of the first counterclaim.  Whereas the previous
19 argument challenged ASLS's ability to recover tort damages under a
20 fiduciary duty theory, this argument concedes that usurpation of a
21 business opportunity may constitute a breach of fiduciary duty
22 leading to tort damages.  Plaintiffs merely argue that this conduct
23 cannot support two separately enumerated claims premised on a
24

25       [5] It is not clear to the court that separate or different
damages are claimed for the breach of contract and the violation
26 of the duties arising out of the joint venture.  That question,
however, is not before the court in the instant motion.

16

1  breach of fiduciary duty.  Thus, this argument is one of pleading
2  form.

3       ASLS concedes that the fourth counterclaim, like the first
4  counterclaim, is a type of claim for breach of fiduciary duty.  <u>See</u>
5  9 Witkin, Summary of California Law, § 13, at 588 (10 ed.) (citing
6  <u>MacIsaac v. Pozzo</u>, 81 Cal. App. 2d 278, 285-286 (1947)).  The
7  specific allegations underlying the fourth counterclaim are that
8  plaintiffs expanded on their own, rather than through the joint
9  venture, thereby usurping business opportunities from which the
10 joint venture could have profited, and that plaintiffs diverted
11 potential revenue away from ASLS by rerouting call to other
12 parties.  Countercl. ¶¶ 77, 78.  The first counterclaim similarly
13 alleges that plaintiffs breached their fiduciary duty to ASLS by
14 "(3) improperly routing calls away from ASLS, . . .  and (6)
15 expanding solely for the benefit of Purple/HOVR, to the exclusion
16 of ASLS."  Countercl. ¶ 60.  Thus, the first and fourth
17 counterclaims both allege that the same conduct constituted a
18 breach of the same duty.  These claims are therefore duplicative,
19 and the fourth counterclaim is dismissed.

20 **B.   Misrepresentation and Fraud Claims**

21      ASLS asserts three claims for fraud, namely promissary fraud,
22 intentional misrepresentation and negligent misrepresentation.  As
23 with the fiduciary duty claims, plaintiffs argue that these claims
24 impermissibly recast contract obligations as torts.  Plaintiffs
25 also argue that these claims have not been adequately pled, in that
26 ASLS has not alleged all the elements of such claims as required by

1  California law, or made allegations with the specificity required
2  by Fed. R. Civ. P. 9(b).

3       **1.   Relation between Misrepresentation and Contract Claims**

4       Plaintiffs assert that ASLS's misrepresentation claims are
5  based entirely upon the alleged violations of the contract, and are
6  thus further impermissible attempts to recast a breach of contract
7  as a tort.  Mot. to Dismiss 8:10-13.  As noted above, when one
8  party to a contract asserts a tort claim against another
9  contracting party, this claim must be based on a duty separate from
10 the contract.  The duties enforced by misrepresentation claims are
11 such separate duties.  See, e.g., Lazar v. Super. Ct., 12 Cal. 4th
12 631, 638, 648-49 (1996) (permitting a claim for promissory fraud
13 claim to proceed alongside a claim for breach of the contractual
14 promise), McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 794
15 (2008).

16      **2.   Whether The Misrepresentation Claims are Adequately Pled**

17      Purple also argues that ASLS has failed to allege the elements
18 of a cause of action for intentional or negligent misrepresentation
19 under California law, and that ASLS's allegations lack the
20 specificity required by Fed. R. Civ. P. 9(b).

21      The elements for intentional misrepresentation under
22 California law are: (1) misrepresentation (a false representation,
23 concealment or nondisclosure), (2) knowledge of falsity, (3) intent
24 to defraud (to induce reliance), (4) justifiable reliance, and (5)
25 resulting damage.  Agosta v. Astor, 120 Cal. App. 4th 596, 603
26 (2004).  Promissory fraud is actionable as a type of intentional

18

misrepresentation under the California Civil Code section 1710(4), which provides that "A promise, made without any intention of performing it" may constitute an actionable misrepresentation. Negligent misrepresentation shares all but the second element of intentional misrepresentation: whereas intentional misrepresentation requires actual knowledge of a representations falsity, for negligent misrepresentation, only an absence of reasonable grounds for believing a statement to be true is required. <u>Fox v. Pollack</u>, 181 Cal. App. 3d 954, 962 (1986).

In addition to these requirements, Federal Rule of Civil Procedure 9(b) provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A pleading meets the particularity requirement of Rule 9(b) "if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." <u>Moore v. Kayport Package Express</u>, 885 F.2d 531, 540 (9th Cir. 1989).

Plaintiffs raise four arguments for dismissal of the three fraud counterclaims. Plaintiffs argue that the claims have not been alleged with sufficient particularity, that the promissory fraud claim fails to adequately allege intent not to perform, that all claims fail to allege reliance, and that the allegations underlying the claims are impermissibly brought on information and belief.

### a.   Circumstances Constituting Fraud

1    ASLS's counterclaims sufficiently specify the representations
2  that are alleged to have constituted fraud, and the time, manner,
3  and speaker for these representations.

4    As to the promissory fraud claim, the allegedly fraudulent
5  promises are the promise to expand the joint venture, Countercl. ¶¶
6  29, 40, 34, and the promise not to preferentially route calls to
7  service providers other than ASLS, ¶¶ 40, 31.  The promises were
8  made in the agreement attached to the counterclaim.  ASLS has
9  sufficiently identified the circumstances of this promise.

10    The intentional and negligent misrepresentation claims
11 also concern in part plaintiffs' alleged refusal to expand and
12 activities in routing calls away from ASLS.  However, whereas the
13 promissory fraud claim alleges that Purple made promises that
14 Purple did not at the time intend to perform, the intentional and
15 negligent misrepresentation claims allege that once Purple broke
16 those promises, by routing calls around ASLS and by secretly
17 expanding apart from the joint venture, Purple misrepresented the
18 fact that it was doing so.  Countercl. ¶¶ 90, 99.  The intentional
19 and negligent misrepresentation claims are also based on an
20 allegation with no analogue in the promissory fraud claim: that
21 Purple misrepresented the accuracy of reports concerning the number
22 video relay service minutes completed by ASLS video interpreters
23 and associated performance data.  Countercl. ¶¶ 90, 99.

24    ASLS has provided the dates, media (emails and monthly reports
25 on the number of video relay service minutes), individuals
26 involved, and content of the alleged misrepresentations underlying

1  these latter two claims.  Countercl. ¶¶ 90, 99.  The counterclaim
2  further specifies that these representations were directed towards
3  ASLS.  Id. ¶¶ 34, 51, 90.  Nonetheless, plaintiffs argue that the
4  counterclaim is inadequate because it does not identify whether the
5  individuals making the alleged misrepresentations were acting on
6  behalf of Purple or HOVRS.  ASLS's counterclaim uses "Purple" to
7  refer to Hands on Video Relay Service and Purple Communications
8  collectively.   Pursuant to this practice, ASLS's allegations
9  supporting the misrepresentation claims refer to "Purple".

10     The Ninth Circuit has held that "[i]n the context of a fraud
11  suit involving multiple defendants, a plaintiff must, at a minimum,
12  'identif[y] the role of [each] defendant[] in the alleged
13  fraudulent scheme.'"  Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th
14  Cir. 2007) (quoting Moore, 885 F.2d at 541).  In Swartz, the court
15  dismissed a claim that was "shot through with general allegations
16  that the 'defendants' engaged in fraudulent conduct but
17  attribute[d] specific misconduct only to [two of the multiple
18  defendants]."  Id.  The Swartz plaintiff's allegations merely
19  stated that the defendants "act[ed] as agents [of the other
20  defendants]" and that the defendants "were active participants in
21  the conspiracy without any stated factual basis."  Id. (internal
22  quotations omitted).

23     Here, although ASLS has not stated which plaintiff/counter-
24  defendant the named individuals acted on behalf of, ASLS has
25  nonetheless exceeded the "minimum" established by Swartz.  By
26  naming the specific employees and executives who made the

1 challenged representations, the allegations are "'specific enough
2 to give defendants notice of the particular misconduct which is
3 alleged to constitute the fraud charged so that they can defend
4 against the charge and not just deny that they have done anything
5 wrong.'" <u>United States v. Smithkline Beecham Clinical Labs.</u>, 245
6 F.3d 1048, 1051-52 (9th Cir. 2001) (quoting <u>Neubronner v. Milken</u>,
7 6 F.3d 666, 671 (9th Cir. 1993)).  One way to provide this
8 specificity is to attribute representations to individual parties,
9 but the same (in fact, a greater) level of specificity or
10 particularity is provided by naming the individual persons
11 involved.

12                  **b.   Intent Not to Perform**

13      Plaintiffs also argue that ASLS's claim for promissory fraud
14 has failed to allege "the circumstances constituting fraud" by
15 inadequately alleging an intent not to perform on the promises.  In
16 a claim for promissory fraud, two forms of intent are relevant: the
17 intent not to perform the promise at the time that it is made, and
18 the intent that the other party rely on the promise.

19      In <u>Richardson v. Reliance Nat. Indem. Co.</u>, No. 99-2952, 2000
20 WL 284211, 2000 U.S. Dist. LEXIS 2838 (N.D. Cal. March 9, 2000),
21 Judge Breyer held that to plead a claim for promissory fraud, the
22 pleader must allege facts supporting the inference that at the time
23 the promise was made, the promisor lacked intent to perform.  2000
24 U.S. Dist LEXIS 2838 at *12-*14.  <u>Richardson</u> based this conclusion
25 on an interpretation of the Ninth Circuit's <u>en banc</u> opinion in <u>In</u>
26 <u>re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).

1 This particular holding from <u>Richardson</u> has been adopted by at

2 least five other decisions of district courts within this circuit.

3 <u>Premiere Innovations, Inc. v. IWAS Indus., LLC</u>, No. 07-cv-1083,

4 2007 WL 2873442, 2007 U.S. Dist. LEXIS 72755 (S.D. Cal. Sept. 28,

5 2007), <u>Mat-Van, Inc. v. Sheldon Good & Co. Auctions</u>, No. 07-cv-912,

6 2007 U.S. Dist. LEXIS 54876, 2007 WL 2206946 (S.D. Cal. July 27,

7 2007), <u>Celador Int'l, Ltd. v. Walt Disney Co.</u>, 347 F. Supp. 2d 846,

8 856 (C.D. Cal. 2004) <u>Hsu v. Oz Optics Ltd.</u>, 211 F.R.D. 615, 620

9 (N.D. Cal. 2002), <u>Smith v. Allstate Ins. Co.</u>, 160 F. Supp. 2d 1150,

10 1152-54 (S.D. Cal. 2001); <u>see also</u> <u>Icasiano v. Allstate Ins. Co.</u>,

11 103 F. Supp. 2d 1187, 1191-92 (N.D. Cal. 2000) (adopting this

12 holding without citation to any authority); <u>but see</u> <u>Watts v.</u>

13 <u>Allstate Indem. Co.</u>, No. S-08-1877, 2009 U.S. Dist. LEXIS 26618

14 (E.D. Cal. Mar. 31, 2009) (declining to adopt this rule).

15 　　This court declines to adopt the <u>Richardson</u> interpretation of

16 <u>GlenFed</u>.  <u>GlenFed</u>, a securities fraud case decided before the

17 enactment of the Private Securities Litigation Reform Act, held

18 that a complaint must "set forth an explanation as to why the

19 statement or omission complained of was false and misleading." 42

20 F.3d at 1548.  Plaintiffs had alleged that defendant falsely

21 portrayed itself "as able to withstand the recession and systemic

22 problems in the thrift industry when in fact, GlenFed was just

23 another problem-plagued thrift riddled by systemic defects." <u>Id.</u>

24 at 1544-45 (internal quotation omitted).  As this court recently

25 explained,

26 　　　　The <u>en banc</u> panel [in <u>GlenFed</u>] reached two

23

1          major holdings.  First, in a claim for fraud,
           plaintiffs are not required to allege facts
2          giving rise to an inference of scienter.  <u>Id.</u>
           at 1546.   Second, pursuant to the Rule 9
3          obligation  to  allege  the  circumstances
           "constituting" fraud, the complaint must do
4          more  than  merely  identify  the  challenged
           representations; it must also explain "what is
5          false or misleading about a statement, and why
           it is false."  <u>Id.</u> at 1548.

6

7  <u>Watts</u>, 2009 U.S. Dist. LEXIS 26618 at *23.   In <u>GlenFed</u>, the

8  challenged representations concerned predictions made on the basis

9  of uncertain information.   The Ninth Circuit held that because

10 "Securities   fraud   cases   often   involve   some   more   or   less

11 catastrophic event occurring between the time the complained-of

12 statement was made and the time a more sobering truth is revealed

13 (precipitating a drop in stock price)," the plaintiff was required

14 to allege "an explanation as to why the disputed statement was

15 untrue or misleading *when made.*"   42 F.3d at 1548 (emphasis in

16 original).

17     <u>Richardson</u> held that in a claim for promissory fraud, intent

18 not to perform is one of the "circumstances constituting fraud."

19 Rule 9(b).   That is, whereas in <u>GlenFed</u> the alleged fraud concerned

20 predictions regarding objective facts, in a claim of promissory

21 fraud the allegation is that a defendant lied about the defendant's

22 intent.   Promissory fraud therefore involves a conflict between

23 Rule 9(b)'s provision that the "circumstances constituting fraud"

24 be pleaded with particularity and the rule's provision that "intent

25 . . . may be alleged generally."   <u>Richardson</u> held that, in the face

26 of this conflict, the first provision was controlling, such that

                                   24

1  "the 'circumstances indicating falseness [must] be set forth.'"

2  _Richardson_, 2000 U.S. Dist. LEXIS 2838 at *12 (quoting _GlenFed_, 42

3  F.3d at 1547-48).  According to _Richardson_, Rule 9(b)'s intent

4  provision only applies once a plaintiff has alleged falsity, and

5  thus only applies to intent to deceive, and not to intent not to

6  perform.  _Id._ at *14.  The court stated that a contrary rule "would

7  effectively eviscerate the effect of Rule 9(b) in every case of

8  promissory fraud."  _Id._

9       Although this court agrees that, in a promissory fraud claim,

10  the two provisions of Rule 9(b) come into some conflict, this court

11  parts ways with _Richardson_ to conclude that the latter provision of

12  Rule 9(b) is controlling.  As a matter of statutory interpretation,

13  the latter provision appears to be the more specific.  In _GlenFed_,

14  the Ninth Circuit strongly rejected defendant's argument that Rule

15  9(b) required allegation of even some facts supporting an inference

16  of scienter, concluding that "plaintiffs may aver scienter

17  generally, just as the rule states – that is, simply by saying that

18  scienter existed."   42 F.3d at 1547.   The Ninth Circuit

19  acknowledged that this rule might allow additional undesirable

20  suits to proceed past the pleading stage, but held that "[w]e are

21  not permitted to add new requirements to Rule 9(b) simply because

22  we like the effects of doing so."   _Id._ at 1546.   Turning from

23  scienter to intent, nothing indicates that Rule 9(b)'s reference to

24  "intent" should be interpreted as applying to only certain forms of

25  intent.  Accordingly, this court concludes that intent, including

26  intent not to perform the contract, may be alleged generally.  _See_

1  also <u>Watts</u>, 2009 U.S. Dist. LEXIS 26618.[6]

2      In the alternative, even if a pleader must allege facts

3  supporting an inference of intent not to perform, ASLS has alleged

4  such facts.  ASLS alleges that before the agreement was entered,

5  Purple had already begun its practice of routing calls around ASLS

6  call centers, and had also taken steps toward expanding separately,

7  rather than through the joint venture.  Countercl. ¶¶ 25, 26.[7]

8          **c.  Reliance**

9      Plaintiffs' third argument regarding the fraud claims'

10  compliance with Rule 9(b) is that ASLS has not sufficiently alleged

11  reliance on the challenged representations.  ASLS alleges that it

12  relied upon the promises underlying the promissory fraud claim in

13  choosing to enter the agreement, Countercl. ¶ 84, and that ASLS

14  relied upon the later alleged misrepresentations in choosing to

15

---

16      [6] In <u>Watts</u>, this court also observed that district courts were
   split on whether the <u>GlenFed</u> rule requiring "an explanation as to
17  why the statement or omission complained of was false and
   misleading," 42 F.3d at 1548, was confined to securities fraud
18  cases, and that the Ninth Circuit had not addressed this issue.
   <u>See</u> 2009 U.S. Dist. LEXIS 26618, *26-*27 (collecting cases).
19

20      [7] Plaintiffs also argue that even if ASLS has provided some
   allegations indicating that Purple did not intend to perform when
21  the promises were made, these allegations may be disregarded
   because they are contradicted by ASLS's allegation that Purple
22  "decided" to breach the contract once ASLS had already begun
   performance.  Plaintiffs misinterpret ASLS's allegations. ASLS may
23  consistently allege that Purple negotiated a contract containing
   provisions that Purple never expected to come into play, and that
24  Purple, at the time of negotiation, intended to breach those
   provisions if they did, contrary to Purple's expectation, become
25  relevant.  This is what ASLS has alleged here, by alleging that
   Purple decided to repudiate the contract once it became clear that,
26  contrary to Purple's expectations, the expansion provisions would
   be triggered.

1  continue to perform under the agreement and not to seek independent

2  expansion at an earlier time, Countercl. ¶ 91.

3      Plaintiffs argue that ASLS's allegations of reliance are

4  rebutted by other allegations made by ASLS.  As to the promissory

5  fraud claim, ASLS alleges that Purple threatened to terminate the

6  joint venture if ASLS did not enter into the current agreement.

7  Countercl. ¶ 28.  Plaintiffs contend that ASLS therefore entered

8  the agreement for this reason, and not out of reliance on the

9  belief that Purple would perform.  Pls.' Mot. to Dismiss 12:7-12.

10 This argument does not lie. ASLS has alleged that its willingness

11 to enter the agreement to preserve the joint venture was predicated

12 on ASLS's belief that the agreement would actually be obeyed.

13 Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 976-77

14 (1977) (a representation is relied upon when it is a "substantial

15 factor" influencing a decision).

16     As to the remaining misrepresentation claims, plaintiffs argue

17 that because ASLS made preparations to open its own centers

18 separate from the joint venture, that ASLS did not rely on the

19 misrepresentations in choosing to remain in the joint venture.

20 This argument fails because ASLS alleges that these preparations

21 were made substantially after the challenged representations, and

22 because such preparations would not preclude a reasonable mind from

23 concluding that ASLS relied upon the misrepresentations.  Guido v.

24 Koopman, 1 Cal. App. 4th 837, 843 (1991).  At most, plaintiffs have

25 raised a question of fact to be resolved at a later stage.

26          **d.   Allegations Made on Information and Belief**

1    Lastly, plaintiffs argue that ASLS's allegations are
2  impermissibly made on information and belief.  This court has
3  already concluded that ASLS's allegations specify "the who, what,
4  when, where, and how" of the fraud claims.  <u>Vess v. Ciba-Geigy</u>
5  <u>Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting <u>Cooper v.</u>
6  <u>Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997)).  Plaintiffs argue that
7  notwithstanding the fact that ASLS's allegations specify these
8  details, the allegations fail because they are made on information
9  and belief.

10    Ordinarily, by signing pleadings, the pleading party
11  represents that "the factual contentions have evidentiary support
12  or, if specifically so identified, will likely have evidentiary
13  support after a reasonable opportunity for further investigation or
14  discovery."  Fed. R. Civ. P. 11(b)(3).  An allegation made "on
15  information and belief" is one that is "based on secondhand
16  information that the declarant believes to be true."  Black's Law
17  Dictionary, 8th Ed., 795 (2004).  Many of the allegations
18  underlying ASLS's three misrepresentation claims are explicitly
19  made on information and belief.  <u>See, e.g.</u>, Countercl. ¶¶ 85, 90,
20  92, 99, 100.

21    In general, federal courts have permitted allegations in
22  complaints to be made on information and belief.  <u>See</u> Charles
23  Wright and Arthur Miller, 5 <u>Federal Practice and Procedure Civ. 3d</u>,
24  § 1224 (2009).  This general acceptance may not extend to fraud
25  claims, as several Ninth Circuit cases have stated that
26  "[a]llegations of fraud based on information and belief usually do

28

1   not satisfy the degree of particularity required under Rule 9(b)."

2   Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir.

3   1987); see also Neubronner v. Milken, 6 F.3d 666, 276 (9th Cir.

4   1993) (following Wool), Moore v. Kayport Package Express, 885 F.2d

5   531, 540 (9th Cir. 1989) (same).  However, these three cases held

6   that allegations based on information and belief suffice when the

7   facts are "within the opposing party's knowledge" and the pleader

8   provides a "statement of the facts on which the belief is founded."

9   Moore, 885 F.2d at 540 (quoting Wool, 818 F.2d at 1439); see also

10  Neubronner, 6 F.3d at 276.

11      Although Neubronner, Moore, and Wool stated the above rule and

12  exception in general terms, it is not clear to this court whether

13  this rule should be confined to securities fraud cases.  All three

14  cases, as well as the cases they relied upon, concerned securities

15  fraud claims.  The rule they adopted subsequently received

16  statutory codification in the Private Securities Litigation Reform

17  Act of 1995 ("PSLRA"), as part of the heightened pleading standard

18  for security fraud actions.  15 U.S.C. § 78u-4(b)(1).  No Ninth

19  Circuit case, whether decided before or after the PSLRA, has

20  applied this rule outside the securities fraud context, and the

21  majority of other circuit opinions applying similar rules have

22  concerned securities fraud.  Various cases have discussed the

23  uniqueness of securities fraud claims, see e.g. GlenFed, 42 F.3d at

24  1546, 1548-49, and this uniqueness is recognized by the imposition

25  of heightened pleading standards in the PSLRA.  Nonetheless, some

26  other circuit courts have applied similar rules to fraud claims

1  other than securities fraud, as have some district courts within
2  this circuit.  <u>See</u> <u>First Capital Asset Mgmt. v. Satinwood, Inc.</u>,
3  385 F.3d 159, 180 (2d Cir. 2004), <u>United States ex rel. Karvelas v.</u>
4  <u>Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 226-231 (1st Cir. 2004),
5  <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>,
6  125 F.3d 899, 903 (5th Cir. 1997); <u>see also</u> <u>Natomas Gardens Inv.</u>
7  <u>Group LLC v. Sinadinos</u>, No. S-08-2308, 2009 U.S. Dist. LEXIS 39907
8  (E.D. Cal. May 12, 2009), <u>Baas v. Dollar Tree Stores, Inc.</u>, 2007
9  U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007), <u>Steinke v. Merck</u>
10 <u>& Co.</u>, 432 F. Supp. 2d 1082, 1089 (D. Nev. 2006).  <u>See also</u> Charles
11 Wright and Arthur Miller, 5 <u>Federal Practice and Procedure Civ. 3d</u>,
12 § 1298 (2009).

13      This court need not decide this issue here.  Assuming that the
14 <u>Neubronner</u> rule applies, ASLS's allegations fall within the
15 recognized exception.  The information concerning plaintiffs'
16 intent, as well as the information concerning plaintiffs' separate
17 expansion, routing of calls, and minute reports, is within
18 plaintiffs' control.  ASLS has also alleged the factual basis for
19 its beliefs regarding the alleged representations.  In the present
20 case, taking ASLS's allegations as a whole, ASLS has plead factual
21 allegations in support of its belief.  ASLS alleges that Purple
22 refused to open new call centers for ASLS despite the fact that
23 ASLS exceeded the threshold under which Purple ordinarily sought
24 expansions, Countercl. ¶ 39.  ASLS attaches an exhibit in which
25 Purple did not intend to expand with ASLS, which is one fact
26 allegedly supporting ASLS's beliefs regarding Purple's earlier

1    actions.  Countercl. ¶ 48, Ex. B.  <u>See also</u> Countercl. ¶ 46.

2    Accordingly, this argument fails, as do plaintiffs' previous

3    arguments for dismissal of ASLS's misrepresentation counterclaims.

4    Plaintiffs' motion to dismiss is denied with respect to these

5    claims.

6    **C.   Unfair Competition**

7    California's Unfair Competition Law, Cal. Bus. & Prof. Code §

8    17200, proscribes "unlawful, unfair or fraudulent" business acts

9    and practices.  ASLS's eighth claim, under the UCL, alleges

10   generally that the conduct underlying the first through seventh

11   causes of action was unlawful, unfair and fraudulent.

12   Plaintiffs argue that if all of ASLS's tort claims are

13   dismissed, the UCL claim should be dismissed as well, because

14   actions in breach of contract are not "unlawful," and because ASLS

15   has not alleged any other unlawful, unfair, or fraudulent conduct.

16   Because this court does not dismiss ASLS's tort claims, the court

17   rejects plaintiffs' contention that ASLS has not alleged unlawful

18   conduct.  Accordingly, the argument for dismissal of the UCL claim

19   fails.

20   **D.   Unjust Enrichment**

21   ASLS's ninth claim is for unjust enrichment.  Under California

22   law, unjust enrichment "is a general principle underlying various

23   doctrines and remedies, including quasi-contract."  <u>Jogani v.</u>

24   <u>Superior Ct.</u>, 165 Cal. App. 4th 901, 911 (2008).  When one party

25   receives a benefit from another or at the other's detriment, and it

26   would be unjust for the former party to retain the benefit, unjust

31

1   enrichment may cause the benefit to be conveyed to the aggrieved
2   party. <u>Peterson v. Cellco P'ship</u>, 164 Cal. App. 4th 1583, 1593
3   (2008). <u>See also</u> <u>Lauriedale Assocs., Ltd. v. Wilson</u>, 7 Cal. App.
4   4th 1439, 1448 (1992); <u>Ward v. Taggart</u>, 51 Cal. 2d 736, 740 (1959)
5   (describing unjust enrichment as a quasi-contractual theory).

6        Although California courts agree on the principles underlying
7   unjust enrichment, they disagree as to whether unjust enrichment is
8   itself a cause of action, or instead a remedy available under other
9   causes of action. Numerous courts have held that "unjust
10  enrichment is not a cause of action." <u>Jogani</u>, 165 Cal. App. 4th at
11  911 (citing <u>Melchior v. New Line Productions, Inc.</u>, 106 Cal. App.
12  4th 779, 793 (2003)); <u>see also, e.g.</u>, <u>Lauriedale Associates, Ltd.</u>
13  <u>v. Wilson</u>, 7 Cal. App. 4th 1439, 1448 (1992). Meanwhile, other
14  California courts have implied that unjust enrichment may stand
15  alone, by describing the elements of a "claim" for unjust
16  enrichment. <u>See, e.g.</u>, <u>Peterson v. Cellco Partnership</u>, 164 Cal.
17  App. 4th 1583, 1593 (2008), <u>Lectrodryer v. Seoulbank</u>, 77 Cal. App.
18  4th 723, 726 (2000). It appears that the former cases predominate,
19  that they speak more directly to the issue, and that they state the
20  better rule: the injustice must be shown through liability on some
21  other claim, and "unjust enrichment" describes a theory of
22  restitution that is a remedy available for the underlying claim.

23       Plaintiffs also argue that even when unjust enrichment is
24  treated as a remedy, it is not available when a contract between
25  the parties exist. The only apparent basis for this argument is
26  plaintiffs argument that ASLS's tort counterclaims improperly

1 restate contractual duties.  This court has already rejected this
2 argument.  Insofar as tort counterclaims are permissible, the fact
3 that a contract exists between the parties does not impose a per se
4 prohibition on the remedies available under those counterclaims.
5      Accordingly, the court rejects plaintiffs' argument that ASLS
6 is not entitled to recover from plaintiffs on an unjust enrichment
7 theory, but the court grants plaintiffs' motion to dismiss ASLS's
8 separately enumerated counterclaim for unjust enrichment.[8]
9 **E.   Accounting**
10      ASLS's  tenth  claim  is  for  an  accounting.   A  claim  for
11 accounting is an action in equity, where the plaintiff seeks an
12 amount that cannot be determined without an accounting.  St. James
13 Church of Christ Holiness v. Super. Ct., 135 Cal. App. 2d 352, 359
14 (1955).  In contrast, "[a]n action for accounting is not available
15 where the plaintiff alleges the right to recover a sum certain or
16 a  sum  that  can  be  made  certain  by  calculation."   Teselle v.
17 McLoughlin, 173 Cal. App. 4th 156, 179 (2009).  "The purpose of the
18 accounting is, in part, to discover what, if any, sums are owed to
19 the  plaintiff,  and  an  accounting  may  be  used  as  a  discovery
20 device."  Id. at 180.
21      Here, ASLS has alleged that absent an accounting, it will be
22 unable to determine the amount of loss it suffered, or the amount
23 of benefit plaintiffs unfairly derived, from the actions underlying
24 _____
25      [8] Again, the court makes no judgment that different damages
flow from the alleged violation of tort and contract causes of
26 action.

33

1 ASLS's various claims, principally the claim for usurpation of
2 business opportunity.  Plaintiffs have not shown that ASLS will be
3 able to secure an adequate remedy absent an accounting.
4 Accordingly, this claim is not dismissed.

5 **F.   Motion to Strike**

6      Plaintiffs' motion to strike is predicated upon the success of
7 their motion to dismiss.  Plaintiffs argue that if all of ASLS's
8 tort claims under which ASLS seeks punitive damages are dismissed,
9 all references to punitive damages in the complaint should be
10 striken.  Because the court denies the motion to dismiss ASLS's
11 claims seeking punitive damages, the motion to strike is denied.

12                          **IV. CONCLUSION**

13      For the reasons stated above, plaintiffs' motion to strike,
14 Doc. No. 12, is DENIED.  Plaintiffs' motion to dismiss the
15 counterclaim is GRANTED IN PART, as follows

16      1.   The motion is GRANTED as to ASLS's fourth claim, for
17           usurpation of business opportunity, and ninth claim, for
18           unjust enrichment.  However, the court reiterates that
19           these claims are dismissed as duplicative, and not
20           because they fail to state a theory of relief.

21      2.   The motion is DENIED as to ASLS's first, fifth, sixth,
22           seventh, eighth and tenth claims.

23      IT IS SO ORDERED.

24      DATED:  August 12, 2009.

25                              _____
26                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
                                UNITED STATES DISTRICT COURT

                                    34